## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA

POWDERCOAT, INC. DBA
DAKOTA FINISHING,

       Plaintiff,

v.

MIDWEST FAMILY MUTUAL
INSURANCE COMPANY,

       Defendant.

Civil Action No.: 1:19-cv-1008

---

## COMPLAINT AND JURY DEMAND

---

**COMES NOW** Plaintiff, Powdercoat, Inc., DBA Dakota Finishing, by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, Midwest Family Mutual Insurance Company, and in support of its Complaint, allege and aver as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's breach of contract, bad faith conduct, breach of fiduciary duty, and refusal to pay the full amount of covered benefits due and owing under Plaintiff's first-party insurance contract without reasonable cause.

## PARTIES

2.     Plaintiff, Powdercoat, Inc., DBA Dakota Finishing ("Plaintiff" or "Dakota Finishing") is a South Dakota corporation with its principal office in Watertown, South Dakota.

3.     Upon information and belief, Defendant, Midwest Family Mutual Insurance Company ("Defendant" or "Midwest Family"), is a corporation duly organized and existing under the laws of the State of Minnesota, with a principal place of business located at 3033 Campus

Drive, Plymouth, Minnesota 55441, which at all relevant times was duly authorized to issue insurance policies in the State of South Dakota.

## JURISDICTION AND VENUE

4.      This court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in South Dakota.

## FACTS COMMON TO ALL COUNTS

5.      Dakota Finishing is the owner of real property located at 507 19th St. SW, Watertown, South Dakota 57201 ("Property").

6.      The Property is comprised of two structures. The south building houses the plating operation utilizing various chemicals, washes, and rinses to color and keep metal parts from oxidizing. The north building houses the Powdercoat line. The two structures are connected by a breezeway.



7.    Both the Powdercoat and plating operations are highly susceptible to contamination. The plating bath materials contain hazardous materials requiring continued heating throughout the building to avoid freezing and the potential for a major environmental spill.



8.    Plaintiff purchased a Businessowner's Policy of insurance from Midwest Family under Policy Number CPSD0560110140 (the "Policy").

9.    The Policy provides property damage coverage for Plaintiff's Property.

10.    The Policy is an all risk policy of insurance.

11.    The Policy is a replacement cost value policy and covers loss to Plaintiff's Property.

12.    The Policy provides coverage for direct physical loss of or damage to covered property at the premises caused by or resulting from any covered cause of loss.

13.    Under the Policy, Midwest Family is obligated to pay for direct physical loss and damage to the insured Property resulting from fire.

14.    Under the Policy, Midwest Family agreed to adjust all losses with its insured fairly and timely.

15.    Plaintiff paid the premiums due under the Policy in a timely manner.

16.     Plaintiff performed all duties and responsibilities required of it under the Policy.

17.     On or about May 7, 2018, during the Policy period, Plaintiff suffered direct physical loss and/or damage at the Property resulting from fire.

18.     The fire caused heat damage to a portion of the building.

19.     The fire caused smoke to spread throughout the building distributing contaminants that were the result of materials consumed by the fire. The decomposition of these materials released a vapor plume of various gases and elements that spread throughout the building.

20.     As a result of decomposing PVC (polyvinyl chloride), chlorine, hydrogen, and carbon are released into the environment. The hydrogen and chlorine react to form hydrogen chloride gas. Exposure to moisture then creates HCl (hydrochloric acid). HCl is a severe catalyst of corrosion on exposed metal surfaces and will continue to regenerate until it is properly neutralized using proven chemicals and proper cleaning techniques.

21.     The photographs below illustrate the corrosive direct physical loss and damage to various exposed metal surfaces throughout the Dakota Finishing Property resulting from the fire occurring on May 7, 2018:

  

22.     The direct physical loss and/or damage resulting from the fire constituted a covered loss under the Policy.

23.     Dakota Finishing timely reported the covered loss and damage to Midwest Family, and made a claim for the loss and damage to the Property.

24.     Midwest Family assigned Claim Number 00366265 to the Property loss.

25.     Midwest Family assigned a field claims representative, Kyle Johnson, to assist with the investigation and adjustment of Dakota Finishing's claim for direct physical loss and damage resulting from the fire.

26.     Midwest Family assigned a senior claims representative, Brian Dahlberg, to assist with the investigation and adjustment of Dakota Finishing's claim for direct physical loss and damage resulting from the fire.

27.     Dakota Finishing retained Adjusters International/Matrix Business Consulting (hereinafter "Adjusters International"), a public adjusting firm, to assist in the investigation and adjustment of its claim for direct physical loss of and damage resulting from a fire occurring on May 7, 2018.

28.     On or about May 8, 2018, Kyle Johnson performed a site inspection and represented to Dakota Finishing that there was good smoke and bad smoke.

29.     On or about May 17, 2018, Dakota Finishing requested an advance of $40,000.00 to assist with anticipated estimated monthly expenses of $70,000.00. However, Midwest Family rejected its Insured's request for an advance of $40,000.00.

30.     On or about May 18, 2018, Midwest Family issued an advance payment of the business personal property in the amount of $10,000.00 to Dakota Finishing.

31.     Midwest Family retained no consultant to determine whether the materials within the plating bath are hazardous. Consequently, Dakota Finishing retained Clean Harbors to perform

a sampling and analysis of plating bath materials to determine whether the materials within the plating bath are hazardous.

32.     On May 21, 2018, Clean Harbors provided an estimate for the sampling and analysis of plating bath materials in the amount of $29,380.00 to determine whether the materials within the plating bath are hazardous.

33.     On or about May 24, 2018, Midwest Family advised Dakota Finishing that it retained Envista Forensics, an outcome-oriented engineering firm, to inspect Dakota Finishing's equipment.

34.     On or about May 30, 2018, Midwest Family provided Dakota Finishing with a preliminary estimated business income loss for one-month complete shutdown and an additional month with loss of the Powdercoat business only in the amount of $34,556.00.

35.     On or about May 30, 2018, Midwest Family issued an actual cash value payment for repairs in the amount of $24,699.83

36.     On June 5, 2019, Midwest Family and Envista Forensics performed a reinspection of the Property.

37.     Upon reasonable suspicion and belief, Midwest Family failed to properly instruct Envista Forensics to perform an inspection to determine:

(a)     What repairs and/or cleaning would be required for the damage caused by the fire to the building;
(b)     Whether the damage and/or corrosion make it necessary for the building to be replaced versus being cleaned and repaired;
(c)     Whether the building be re-insulated without full replacement of the building or by removing the roofing components;
(d)     Whether the plating bath materials are hazardous; and
(e)     How to decontaminate, remove, and manage the hazardous waste materials contained within the plating bath materials

38.     Midwest Family's failure to properly instruct Envista Forensics resulted in an incomplete investigation leading to the continued delay of covered insurance benefits to the detriment of Dakota Finishing.

39.     Shortly thereafter, Dakota Finishing engaged Continental Machinery to provide a report and repair recommendation for cleaning of damaged machinery throughout the Dakota Finishing Property.

40.     On or about June 29, 2018, Midwest Family issued an actual cash value payment for business personal property in the amount of $29,380.00 for the sampling and analysis of plating bath materials performed by Clean Harbors. Midwest Family improperly attributed this analysis cost to its Insured's business personal property coverage.

41.     On July 18, 2018, Dakota Finishing requested an advance to cover expenses through July 2018 and August 2018.

42.     On July 27, 2018, Envista Forensics provided Midwest Family with a copy of its inspection report which simply concluded that the overall building structure did not sustain structural damage as a result of the fire and that the interior paint booth structure sustained structural damage to approximately four 2x6 wall girts and associated metal wall panels from the fire.

43.     Due to Midwest Family's failure to properly instruct Envista Forensics, the Envista Forensics inspection report did not address:

(a)     What repairs and/or cleaning would be required for the damage caused by the fire to the building;

(b)     Whether the damage and/or corrosion make it necessary for the building to be replaced versus being cleaned and repaired;

(c)     Whether the building be re-insulated without full replacement of the building or by removing the roofing components;

(d)     Whether the plating bath materials are hazardous; and

    (e)    How to decontaminate, remove, and manage the hazardous waste materials contained within the plating bath materials.

44.    On July 30, 2018, Dakota Finishing, for a second time, requested payment for business interruption in June 2018 and an advance on the undisputed amount for business interruption for July 2018 and August 2018. Midwest Family advised Dakota Finishing that despite the financial hardship it was enduring, no advance on business interruption would be forthcoming.

45.    On July 31, 2018, Midwest Family issued payment for business interruption for June 2018 and July 2018 in the amount of $77,653.00.

46.    On August 8, 2018, Dakota Finishing provided Midwest Family with Continental Machinery's preliminary report and repair recommendation for cleaning of damaged machinery throughout the Dakota Finishing Property.

47.    Shortly thereafter, Dakota Finishing engaged Belfor Environmental to provide a proposed remediation plan for the decontamination and management of hazardous waste materials contained within the plating bath materials resulting from the fire.

48.    On September 14, 2018, Midwest Family provided Dakota Finishing with its revised estimate to repair direct physical loss and damage to the building resulting from the fire which outlined $89,323.71 in replacement cost value covered benefits and $72,940.14 in actual cash value covered benefits (hereinafter "Midwest Family Revised Building Repair Estimate").

49.    Midwest Family's Revised Building Repair Estimate did not take into consideration the full extent of Dakota Finishing's loss.

50.    Midwest Family's Revised Building Repair Estimate did not include any supporting documentation or repair protocols, nor did it take into consideration the Powdercoat and plating elevated susceptibility to contamination.

51.     Midwest Family's Revised Building Repair Estimate failed to provide for the proper cleaning and restoration of damaged machinery as it gave no consideration to neutralization of contamination or protection of equipment.

52.     Midwest Family Revised Building Repair Estimate provided no consideration to the required decontamination, removal, and management of hazardous waste materials contained within the plating bath materials.

53.     Midwest Family's Revised Building Repair Estimate did not provide for the removal of insulation within the south building and only included partial insulation removal in the north building, nor did it provide any allowance for detachment and resetting of the panels that pinch the insulation between the purlins.

54.     Midwest Family's Revised Building Repair Estimate failed to address the disposal of the hazardous materials contained within the plating bath materials, demonstrating Midwest Family was using unqualified or untrained adjusters unfamiliar with the complexity and special consideration required to properly handle and dispose of hazardous waste materials.

55.     Midwest Family's Revised Building Repair Estimate provided no consideration or allowance for necessary repairs to the north building housing the Powdercoat operation.

56.     Midwest Family's Revised Building Repair Estimate improperly depreciated approximately $24,000.00 of paint inventory.

57.     Midwest Family's Revised Building Repair Estimate failed to provide all covered insurance benefits under Dakota Finishing's insurance Policy in order to deny full payment of insurance benefits owed to Dakota Finishing according to the Policy.

58.     Midwest Family's Revised Building Repair Estimate demonstrates Midwest Family was using unqualified or untrained adjusters resulting in an unreasonable claim denial.

59.     On or about September 17, 2018, Midwest Family issued a second actual cash value payment for repairs in the amount of $12,860.31.

60.     On October 1, 2018, Dakota Finishing requested the status of payment of business interruption for the months of August 2018 and September 2018.

61.     On October 1, 2018, Dakota Finishing provided Midwest Family with an executed sworn statement in proof of loss in the amount of $2,957,971.98 ("hereinafter Proof of Loss Package").

62.     The Dakota Finishing Proof of Loss Package included $1,549,358.22 in replacement cost value benefits related to the repairs of direct physical loss and damage to the Property, $1,307,476.76 in replacement cost value benefits related to the repairs of direct physical loss and damage to business personal property, and $106,137.00 for incurred business interruption.

63.     The Dakota Finishing Proof of Loss Package included eighty-one pages of supporting documentation, thorough analysis, invoicing, and comprehensive repair protocols designed to protect equipment and neutralize contamination.

64.     The Dakota Finishing Proof of Loss Package included an estimate for repairs of direct physical loss and damage to the Property resulting from the fire which outlined $1,549,358.22 in replacement cost value covered benefits and $1,279,743.98 in actual cash value covered benefits.

65.     The Dakota Finishing Proof of Loss Package included allowance for the full teardown of the plating side of the Property pending Dakota Finishing's receipt of alternative repair recommendations from the insulation/metal building contractor.

66.     The Dakota Finishing Proof of Loss Package included Continental Machinery's comprehensive report and proposal for cleaning and restoration of damaged machinery throughout

the Dakota Finishing Property (hereinafter "Continental Machinery Report"). Unlike the Midwest Family Revised Building Repair Estimate, the Continental Machinery Report detailed a comprehensive two-phase restoration plan designed to protect equipment and neutralize contamination.

67.     The Dakota Finishing Proof of Loss Package demonstrates Midwest Family's failure and refusal to pay insurance benefits under Dakota Finishing's insurance Policy in order to deny insurance benefits owed to Dakota Finishing according to the Policy.

68.     On October 4, 2018, Dakota Finishing, for a second time, requested the status of payment of business interruption for the months of August 2018 and September 2018.

69.     On October 9, 2018, Dakota Finishing provided Midwest Family with a copy of Belfor Environmental's preliminary proposal for the decontamination and management of hazardous waste materials contained within the plating bath materials resulting from the fire in the amount of $875,000.00 (hereinafter Belfor Decontamination Estimate").

70.     The Belfor Decontamination Estimate further outlined a preliminary proposal for the cleaning and removing of damaged insulation in the north and south buildings.

71.     On October 19, 2018, Dakota Finishing, for a third time, requested the status of payment of business interruption for the months of August 2018 and September 2018.

72.     On October 23, 2018, Midwest Family issued payment for business interruption for August 2018 and September 2018 in the amount of $47,880.00.

73.     Despite the complexity of the loss and Dakota Finishing's endeavor to provide a comprehensive Proof of Loss Package, on October 25, 2018, Midwest Family advise Dakota Finishing that it was rejecting its Proof of Loss for late submission.

74.     On October 25, 2018, Midwest Family requested an onsite meeting with Dakota Finishing, Adjusters International, Belfor Environmental, and Continental Machinery.

75.     On or about October 31, 2018, Midwest Family issued a third actual cash value payment for repairs to the Property in the amount of $46,884.74.

76.     On or about October 31, 2018, Midwest Family issued a second actual cash value in the amount of for business personal property in the amount of $802.88.

77.     On or about October 31, 2018, Midwest Family issued a payment for business interruption for the month of September 2018 in the amount of $47,880.00.

78.     Completely ignoring the fact that it had not provided Dakota Finishing with any proposal or estimate to remove the hazardous materials contained within the plating bath materials required to begin repairs, Midwest Family advised Dakota Finishing that it would not provide any additional business interruption or loss of income payments.

79.     Given the investigation required to properly evaluate the necessary repairs to restore the Dakota Finishing Property to its pre-loss condition, including the careful planning and consideration required to properly handle the removal of hazardous materials and neutralize contamination within the Property, Midwest Family's refusal to provide business interruption benefits beyond September 2018 that were due and owing under the Policy was vexatious and without reasonable cause.

80.     Most concerning, Midwest Family's unreasonable and vexatious denial has resulted in the financial ruin of Dakota Finishing.

81.     On November 5, 2018, Dakota Finishing notified Midwest Family of its concerns with the costs to winterize the Property to prevent freezing of the plating bath materials given that

no benefits had been paid for the decontamination and management of hazardous waste materials contained within the plating bath materials resulting from the fire.

82.     On November 9, 2018, Midwest Family notified Dakota Finishing that it would not cover the costs to winterize the Property to prevent freezing of the plating bath materials. Despite having provided no covered benefits or even an estimate for the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials, Midwest Family notified Dakota Finishing that work to winterize the Property was the result of delays of Dakota Finishing.

83.     Despite requesting an onsite meeting with Belford Environmental and Continental Machinery, on November 9, 2018, Midwest Family notified Dakota Finishing that it would need to incur the expense of arranging travel and time for the presence of Belford Environmental and Continental Machinery.

84.     Because of Midwest Family's refusal to cover the costs of arranging travel and time for the presence of Belford Environmental and Continental Machinery, Dakota Finishing proposed scheduling a telephone conference between Belford Environmental, Continental Machinery, and Envista Forensics.

85.     Completing ignoring its obligations and the financial ruin of its Insured, on November 14, 2018, Midwest Family advised Dakota Finishing that it would need to incur the expense of arranging travel for the presence of Belford Environmental and Continental Machinery at Midwest Family's reinspection of the Property as "part of proving your claim."

86.     On December 6, 2018, Midwest Family again demanded that Dakota Finishing incur the expense of arranging travel for the presence of Belford Environmental and Continental Machinery at Midwest Family's reinspection of the Property.

87.     Midwest Family and Envista Forensics performed a reinspection of the Property on January 8, 2019. Envista Forensics generated a corresponding report dated January 15, 2019, which provided no additional information. Completely ignoring Midwest Family's incompetent adjustment and failure to pay the claim in full, the Envista Forensics report simply concluded that Dakota Finishing should have began cleaning equipment as soon as possible after the loss.

88.     On January 21, 2019, Dakota Finishing requested the status of payment of business interruption for the months of October 2018, November 2018, December 2018, and January 2019.

89.     Envista Forensics generated a third report on January 23, 2019 (hereinafter "Envista Forensics Third Inspection Report"), which for the first time addressed:

    (a)     What repairs and/or cleaning would be required for the damage caused by the fire to the building;

    (b)     Whether the damage and/or corrosion make it necessary for the building to be replaced versus being cleaned and repaired;

    (c)     Whether the building be re-insulated without full replacement of the building or by removing the roofing components;

90.     The Envista Forensics Third Inspection Report concluded that the north building required cleaning of smoke and soot from the structural steel framing members, followed by resealing as needed as well as the removal and replacement of bat insulation.

91.     The Envista Forensics Third Inspection Report concluded that damaged insulation could be completed through a retrofit insulation system of draped style insulation or application of a closed cell spray foam insulation.

92.     The Envista Forensics Third Inspection Report failed to address whether the plating bath materials were hazardous.

93.     The Envista Forensics Third Inspection Report failed to address the requirements to decontaminate, remove, and manage the hazardous waste materials contained within the plating bath materials.

94.     Despite finally addressing the repairs and cleaning required for the damage caused by the fire to the buildings in January 2019, Midwest Family advised Dakota Finishing that it was rejecting requests for payment for business interruption for the months of October 2018, November 2018, December 2018, and January 2019.

95.     Despite making payment for cleaning in October 2018, on January 22, 2019, Midwest Family advised Dakota Finishing that it was rejecting requests for payment for business interruption for the months of October 2018, November 2018, December 2018, and January 2019.

96.     On January 28, 2019, Dakota Finishing, for a second time, pled with Midwest Family to provide business interruption for the months of October 2018, November 2018, December 2018, and January 2019, given Midwest Family's continued investigation of smoke damage, repairs to the Powdercoat building, and failure to provide an estimate for the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials.

97.     Completely ignoring the fact that it had not provided Dakota Finishing with any proposal or estimate to remove the hazardous materials contained within the plating bath materials required to begin repairs, on January 29, 2019, Midwest Family again advised Dakota Finishing that it was rejecting requests for payment for business interruption for the months of October 2018, November 2018, December 2018, and January 2019.

98.     Given the continued investigation required to properly evaluate the necessary repairs to restore the Dakota Finishing Property to its pre-loss condition in January 2019, including the careful planning and consideration required to properly handle the removal of hazardous materials and neutralize contamination within the Property, Midwest Family's refusal to provide

business interruption benefits beyond September 2018 that were due and owing under the Policy was vexatious and without reasonable cause.

99.     On January 30, 2019, Midwest Family advised Dakota Finishing that it would not review any claim for covered business interruption benefits beyond September 2018.

100.    On February 1, 2019, Dakota Finishing provided Midwest Family with an estimate from Clean Harbors for the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials in the amount of $189,299.64 (hereinafter "Clean Harbors Decontamination Estimate").

101.    On February 13, 2019, Dakota Finishing requested an update as to the review and approval of the Clean Harbors Decontamination Estimate to allow Dakota Finishing to move forward with the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials.

102.    On February 13, 2019, Dakota Finishing further notified Midwest Family that its owners would soon be forced to sell their personal home to generate income to prevent the plating bath materials from freezing and creating a major environmental spill.

103.    On February 26, 2019, Dakota Finishing requested a copy of the Envista report relating to the reinspection that occurred on January 8, 2019.

104.    On March 4, 2019, nearly ten months after the loss, Midwest Family agreed to pay for the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials outlined within the Clean Harbors Decontamination Estimate.

105.    Despite agreeing to pay for the removal of the hazardous materials contained within the plating bath materials required to begin repairs in March 2019, Midwest Family notified

Dakota Finishing that it was rejecting any claim for payment for business interruption for the months of October 2018, November 2018, December 2018, January 2019, and February 2019.

106.    On March 4, 2019, Midwest Family issued an additional payment for business personal property in the amount of $16,525.78.

107.    On March 4, 2019, Midwest Family issued an additional payment related to its unreasonable depreciation of paint materials in the amount of $24,049.93.

108.    On April 2, 2019, Dakota Finishing requested Midwest Family to release payment for business interruption between October 1, 2018 and when the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials is completed.

109.    On April 3, 2019, Dakota Finishing again requested Midwest Family engage an industrial hygienist to perform appropriate testing to determine the absence of smoke or soot throughout the Property.

110.    On April 4, 2019, Midwest Family notified Dakota Finishing that it would not consider any business interruption benefits regardless of when the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials is completed.

111.    Completely ignoring the fact that it had not provided Dakota Finishing with any proposal or estimate to remove the hazardous materials contained within the plating bath materials required to begin repairs, on April 9, 2019, Midwest Family advised Dakota Finishing that the period of time for Clean Harbors to generate a repair protocol and estimate for the decontamination, removal, and management of hazardous waste materials contained within the

plating bath materials was excessive and therefore would not consider any additional business interruption benefits.

112.    Given Midwest Family's failure to conduct ANY investigation into the removal the hazardous materials contained within the plating bath materials required to begin repairs, Midwest Family's refusal to provide business interruption benefits due and owing under the Policy between October 1, 2018 and when the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials is completed was vexatious and without reasonable cause.

113.    To date, Midwest Family has failed to produce a contractor or construction consultant willing to opine on the ability to clean the building using the scope outlined within the Midwest Family's Revised Building Repair Estimate.

114.    To date, Midwest Family has failed to engage an industrial hygienist to analyze the smoke damage in the south building housing the plating operation.

115.    To date, Midwest Family has refused to reimburse Dakota Finishing for the costs incurred in retaining Continental Machinery despite relying on Continental Machinery's work product.

116.    To date, Midwest Family has refused to consider additional covered business interruption benefits beyond September 2018.

117.    Midwest Family has under-reserved Dakota Finishing's loss demonstrating that the Dakota Finishing fire loss is much larger than Midwest Family ever anticipated or was capable of properly handling.

118.    Midwest Family has failed to reasonably investigate Dakota Finishing's claim for direct physical loss of and/or damage to the Property resulting from a fire occurring on or about May 7, 2018.

119.    Midwest Family refuses to consider evidence supporting Dakota Finishing's position, including comprehensive reports submitted by Adjusters International, Belfor Environmental, and Continental Machinery.

120.    Midwest Family has ignored evidence of covered direct physical loss and damage to the Property resulting from a fire occurring on or about May 7, 2018.

121.    Midwest Family's failure to pay the claim in full has resulted in a breach of contract.

122.    Midwest Family's failure to pay the claim has resulted, and continues to result, in additional damages to the Property.

123.    Midwest Family's conduct has prevented Dakota Finishing from resuming operations of its Powdercoat and plating business.

124.    Midwest Family's conduct has placed Dakota Finishing is a financial position where it is unable to continue paying its utilities.

125.    Midwest Family's failure to pay the claim has resulted in financial hardship to Dakota Finishing.

126.    Midwest Family's conduct has resulted in the financial ruin of Dakota Finishing.

127.    Midwest Family has refused to pay the full amount of covered benefits due and owing under Plaintiff's first-party contract without reasonable cause.

128.    Midwest Family's conduct illustrates a misrepresentation of insurance policy benefits in order to deny full payment of insurance benefits owed to Dakota Finishing according to the Policy.

129.     It is apparent from Midwest Family's conduct and investigation that Midwest Family is using unqualified or untrained adjusters unfamiliar with the complexity and special considerations that are required to investigate and adjust a fire loss claim.

130.     It is apparent from Midwest Family's conduct that Midwest Family has adopted a plan or approach to delay, as much as possible, its handling and payment of the Dakota Finishing claim.

131.     Midwest Family's conduct has resulted in an avoidable harm to Dakota Finishing.

132.     Dakota Finishing has fulfilled all duties required of it under the Policy after discovery of the loss.

133.     Dakota Finishing has performed all conditions precedent and subsequent required under the Policy, or alternatively, has been excused from performance by the acts, representations, and/or conduct of Midwest Family.

134.     Most concerning, Midwest Family has compelled Dakota Finishing to institute litigation to recover amounts due under its insurance Policy by offering substantially less than Dakota Finishing's amount of loss.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

135.     Dakota Finishing realleges and reaffirms Paragraphs 1-134 as if fully set forth herein.

136.     Dakota Finishing purchased an all risk policy requiring Midwest Family to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

137.     The Policy between Dakota Finishing and Midwest Family is a binding contract.

138.    Dakota Finishing paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Midwest Family.

139.    Midwest Family has denied certain covered damages and continues to delay and deny certain claimed damages.

140.    Midwest Family's failure to honor its obligations under the Policy is a breach of contract.

141.    Midwest Family's breach of contract has damaged, and continues to damage Dakota Finishing.

142.    Dakota Finishing is entitled to all benefits due and owing under the Policy.

143.    Midwest Family's refusal to pay the full amount of said loss was vexatious and without reasonable cause and Dakota Finishing is entitled to attorney's fees pursuant to SDCL § 58-12-3.

## SECOND CLAIM FOR RELIEF
### (Bad Faith)

144.    Dakota Finishing realleges and reaffirms Paragraphs 1-143 as if fully set forth herein.

145.    Under the Policy and South Dakota law, Midwest Family had a duty to act reasonably and in good faith in the handling of Dakota Finishing's claim.

146.    Under the Policy and South Dakota law, Midwest Family had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Dakota Finishing and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

147.    Under the Policy and Colorado law, Midwest Family owes Dakota Finishing the duty of good faith and fair dealing.

148.   Midwest Family had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

149.   Midwest Family sold Dakota Finishing the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

150.   Midwest Family knew that Dakota Finishing purchased the Policy to protect its Property in the event of a loss.

151.   Dakota Finishing has cooperated with Midwest Family in the processing of its claim for covered benefits resulting from a fire occurring on or about May 7, 2018.

152.   Dakota Finishing has cooperated with Midwest Family in the investigation of its claim for covered benefits resulting from a fire occurring on or about May 7, 2018.

153.   Dakota Finishing has not erected any obstacles to Midwest Family's ability to investigate Dakota Finishing's claim for covered benefits resulting from a fire occurring on or about May 7, 2018.

154.   Dakota Finishing has not erected any obstacles to Midwest Family's ability to evaluate Dakota Finishing's claim for covered benefits resulting from a fire occurring on or about May 7, 2018.

155.   Midwest Family owes Dakota Finishing the duty to comply with SDCL § 58-33-67, which prohibits unfair or deceptive practices in dealing with its insureds, including (but not limited to) the unfair or deceptive practices of:

> (1)   Failing to acknowledge and act within thirty days upon communications with respect to claims arising under insurance policies and to adopt and adhere to reasonable standards for the prompt investigation of such claims;
>
> (3)   Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the denial of a claim;

    (4)    Failing to promptly settle claims, where liability has become reasonably clear under one portion of the insurance policy coverage to influence settlements under other portions of the insurance policy coverage.

156.    As demonstrated by the preceding Paragraphs of Dakota Finishing's Complaint, Midwest Family breached the duty of good faith and fair dealing it owed to Dakota Finishing.

157.    Midwest Family disregarded the validity of Dakota Finishing's claim for direct physical loss and damage resulting from a fire occurring on or about May 7, 2018.

158.    Midwest Family disregarded information and documentation illustrating unpaid covered damages to the Property resulting from a fire occurring on or about May 7, 2018.

159.    Midwest Family failed to indemnify Dakota Finishing to its pre-loss condition.

160.    Midwest Family failed to treat Dakota Finishing's interests with equal regard to its own.

161.    Midwest Family has misrepresented the terms of the Policy.

162.    Midwest Family has refused to pay Dakota Finishing's claim without conducting a reasonable investigation based upon all available information.

163.    Despite being provided with information substantiating covered damages overlooked by Midwest Family during its investigation, Midwest Family has not attempted in good faith to effectuate a prompt, fair, and equitable settlement of Dakota Finishing's claim in which liability has become reasonably clear.

164.    Midwest Family denied, and continues to deny, Dakota Finishing's claim for covered damages without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

165. Midwest Family has compelled Dakota Finishing's to institute litigation to recover amounts due under its insurance policy by offering substantially less than Dakota Finishing's amount of loss.

166. Midwest Family used unfair and deceptive acts and practices in dealing with the Dakota Finishing's claim for coverage through, among other things, its failure to acknowledge and act on Dakota Finishing's claim, its failure to adhere to reasonable standards regarding the handling of claims, its failure to reasonably investigate the claim, its failure to promptly provide a reasonable explanation of the basis of the denial, and its failure to promptly settle Dakota Finishing's claim when liability was clear.

167. Midwest Family has mischaracterized the evidence to the benefit of itself by, among other reasons, ignoring evidence presented by its Insured illustrating covered damages overlooked by Midwest Family during its investigation.

168. Midwest Family has failed to be open and honest in its dealings with Dakota Finishing

169. Midwest Family denied Dakota Finishing claim by failing to objectively evaluate Dakota Finishing's claim based on all available evidence, and not just evidence which Midwest Family believes supports its position.

170. Midwest Family's decision to underpay the benefits owed to Dakota Finishing was intentional and not accidental.

171. Midwest Family failed to assist Dakota Finishing with the presentation of its claim.

172. Midwest Family breached its duty to act reasonably and in good faith by conducting an outcome-oriented investigation of Dakota Finishing's claim for direct physical loss and/or damages resulting from a fire occurring on or about May 7, 2018.

173.   Midwest Family denied Dakota Finishing's claim without having documented a reasonable investigation based upon all information.

174.   Midwest Family has ignored objective evidence of illustrating covered damages resulting from a fire occurring on or about May 7, 2018.

175.   Midwest Family lacked a reasonable basis to deny or withhold payment of covered benefits for direct physical loss and damage resulting from a fire occurring on May 7, 2018.

176.   Midwest Family has delayed the payment of undisputed benefits to the detriment of Dakota Finishing.

177.   Midwest Family has acted in bad faith in refusing to provide business interruption benefits due and owing under the Policy between October 1, 2018 and when the decontamination, removal, and management of hazardous waste materials contained within the plating bath materials is completed.

178.   Midwest Family's conduct demonstrates a relentless plan designed to lower the amount paid on claims.

179.   Midwest Family improperly set various claims handling goals to reduce the amount paid on claims.

180.   Midwest Family improperly denied Dakota Finishing's claim to reduce overall claims payments.

181.   Midwest Family improperly denied Dakota Finishing's claim to increase profits.

182.   Midwest Family improperly denied Dakota Finishing's claim to maintain its loss ratio.

183.   Midwest Family improperly denied Dakota Finishing's claim to meet department goals.

184. Midwest Family's conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Dakota Finishing.

185. Midwest Family improperly denied Dakota Finishing's claim by motivating its claims department to pay less on claims that are otherwise owed.

186. Midwest Family improperly denied Dakota Finishing's claim to reduce the average amount paid on overall claims.

187. Midwest Family has committed unfair claim settlement practices as alleged in the preceding paragraphs of Dakota Finishing's Complaint.

188. Midwest Family has acted in bad faith in its failure to consider all evidence and reports, including those provided by Adjusters International, Belfor Environmental, and Continental Machinery.

189. Midwest Family has acted in bad faith in its failure to conduct ANY investigation into the removal of hazardous materials within the plating bath materials required to begin repairs.

190. Midwest Family has acted in bad faith in its failure to conduct a thorough, fair, and complete investigation of the claim.

191. Midwest Family has acted in bad faith in forcing Dakota Finishing to incur the expense of professionals as "part of proving" its claim.

192. Midwest Family constitutes a bad faith breach of the insurance contract.

193. Midwest Family has committed such actions with such frequency as to indicate a general business practice.

194. Midwest Family knew or through a reasonable investigation would have known that it lacked a reasonable basis to deny or withhold payment of benefits owed under the Policy.

195. Midwest Family intentionally and recklessly employs a claims handling process that deliberately aims at maximizing its profits and producing an unjustified windfall, all at the expense of its insureds.

196. Midwest Family intentionally and recklessly employs a claims handling process that is intended to delay the full payment of benefits owed under the terms of its insurance policy.

197. Midwest Family intentionally and recklessly employs a claims handling process that is intended to deny the full payment of benefits owed under the terms of its insurance policy.

198. Midwest Family's conduct constitutes actionable bad faith and has caused Dakota Finishing damage in an amount to be proven at trial.

199. Midwest Family's conduct was done without a reasonable basis and with knowledge or reckless disregard for the lack of reasonable basis.

200. Midwest Family's refusal to provide coverage and to honor the plain terms of its insurance contract was willful, wanton and with reckless disregard, entitling Dakota Finishing to an award of punitive damages.

201. Midwest Family's refusal to provide coverage and honor the plaint terms of its insurance contract caused substantial damages to Plaintiff, including, but not limited to, attorney's fees, public adjuster fees, financial distress, and emotional distress.

202. As a further result of Midwest Family's conduct, Dakota Finishing's Property has been in a state of disrepair and disarray for many months. Dakota Finishing has been unable to resume its business operations and is a state of financial ruin.

### THIRD CLAIM FOR RELIEF
### (Vexatious Refusal To Pay)

203. Dakota Finishing realleges and reaffirms Paragraphs 1-202 as if fully set forth herein.

204.    Midwest Family's failure and refusal to pay insurance benefits under Dakota Finishing's insurance Policy was vexatious and without reasonable cause, such that Plaintiff is entitled to recover its reasonable attorney's fees pursuant to SDCL § 58-12-3.

205.    Midwest Family misrepresented its insurance policy benefits by ignoring policy provisions and it violated applicable South Dakota law in order to deny full payment of insurance benefits owed to Plaintiff according to the Policy.

206.    Midwest Family maintained its unreasonable and vexatious claim denials even after it knew or reasonably should have known that such benefits were owed under the policies it sold Plaintiff making attorney's fees appropriate under SDCL § 58-33-5 and § 58-33-46.1.

## FOURTH CLAIM FOR RELIEF
### (Punitive Damages)

207.    Dakota Finishing realleges and reaffirms Paragraphs 1-206 as if fully set forth herein.

208.    In doing all things herein alleged, Midwest Family acted intentionally, recklessly, vexatious, oppressively and/or maliciously and was guilty of a wanton and reckless disregard of the contractual and statutory and/or common law rights of Dakota Finishing.

209.    Dakota Finishing is entitled to punitive damages as the only way of deterring Midwest Family from continuing to employ these wrongful, unreasonable and vexatious tactics against its own policyholders.

210.    Midwest Family's denial is intentional, malicious, oppressive, and done with reckless disregard for the rights of its own insured, and punitive damages are necessary to deter future conduct of this sort, and shall be determined in an amount in accordance with Midwest Family's net worth.

## REQUEST FOR JURY TRIAL

211.    Dakota Finishing requests trial by jury with respect to all claims and issues triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, Powdercoat, Inc. DBA Dakota Finishing, prays of judgement against Midwest Family Mutual Insurance Company as follows:

1.    For damages resulting from Midwest Family's breach of contract;

2.    For an additional sum as and for punitive or exemplary damages in an amount to be set by the jury herein, based upon Dakota Finishing's net worth and earnings;

3.    For Dakota Finishing's attorney fees, costs, and expense of these proceedings because of Midwest Family's vexatious and unreasonable refusal to pay pursuant to SDCL § 58-12-3;

4.    For pre-judgement and post-judgment interest on any award to which Dakota Finishing is held entitled by jury;

5.    For Plaintiff's costs and disbursements herein; and

6.    For such other and further relief as the Court determines to be just and proper.

_/s/ Rolly Samp_
Rolly Samp, Esq.
Samp Law Offices
2101 W. 41st Street
Sioux Falls, SD 57105
Telephone: 605-339-1020
Facsimile:  605-334-6630
E-Mail: rsamp@samplaw.com

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Powdercoat, Inc. d/b/a Dakota Finishing

**(b)** County of Residence of First Listed Plaintiff   Codington
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rollyn H. Samp, Samp Law Office   (605) 339-1020
2101 W. 41st Street, Suite 2000
Sioux Falls, SD 57105

## DEFENDANTS

Midwest Family Mutual Insurance Company

County of Residence of First Listed Defendant   Hennepin
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                           *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Relations | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 740 Railway Labor Act | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332(a) and 28 U.S.C. 1441

Brief description of cause:
breach of contract, bad faith conduct, breach of fiduciary duty and refusal to pay the full amount of covered benefit

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   05/06/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____